UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                                                          :
TYRONE EDWARD CRUMP,                                      :
                                                          :        MEMORANDUM AND ORDER
                            Plaintiff,                    :
                                                          :           10-cv-632 (WFK) (ETB)
               -against-                                  :
                                                          :
NBTY, INC., and PAT MAHONEY,                              :
                                                          :
                            Defendants.                   :
                                                          :
-------------------------------------------------------------X

**KUNTZ II, United States District Judge**

  Plaintiff Edward Crump ("Plaintiff") brings this action against his former employer, NBTY, Inc. ("Defendant"), for alleged violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"). Plaintiff asserts Defendant discriminated against and fired him because he is African-American. Defendant moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons stated below, the Court denies the motion for summary judgment.

## I. BACKGROUND

  Defendant is a Long Island-based manufacturer, wholesaler, and retailer of vitamins and nutritional supplements. *Def.'s Supp. Mem.* at 2. It operates multiple warehouses in Long Island and employs stock associates, supervisors, receiving clerks, and other personnel responsible for managing warehouse and shipping operations. *Id.* Plaintiff began working for Defendant through an employment agency as a temporary stock associate. *Id.* Defendant offered Plaintiff a full-time position on the night shift in February 2008. *Id.*

1

In early December 2008, Defendant received an anonymous complaint about the overall treatment of stock associates on the night shift. *Id.* at 3. Nicole Waldemar, a Human Resources Generalist, and Patrick Mazzeo ("Mazzeo"), the Vice President of Human Resources, spoke with various associates on the night shift regarding this complaint, but they could not substantiate it. *Id.* In fact, Plaintiff had good things to say about the company and his supervisor, Charlie Triebel ("Triebel"). *Id.* However, during this series of conversations, one or more associates indicated that workers were stealing product from the warehouse. *Id.* Plaintiff alleges these employees named himself and two other associates as the culprits, though Defendant asserts no specific names were given at this time. *Pl.'s Opp'n Mem.* at 4; *Def.'s Supp. Mem.* at 3.

One of Plaintiff's co-workers, Shawn Graham ("Graham"), called Defendant at the end of December 2010 to report an alleged theft. *Def.'s Supp. Mem.* at 3. Defendant alleges Graham called Triebel and stated he had witnessed Plaintiff exit the warehouse through a side receiving department door with what he believed to be product concealed under his jacket. *Id.* Plaintiff denies he stole anything, and Mazzeo testified Graham never actually saw the physical product. *Crump Dep. Tr.* at 78:22–24; *Mazzeo Dep. Tr.* at 18:15–25. Because of this eyewitness account of the alleged theft, Defendant launched an investigation and placed Plaintiff on suspension pending its outcome. *Def.'s Supp. Mem.* at 3–4.

Defendant alleges the side receiving door Plaintiff used was off-limits to stock associates for security purposes, with only truck drivers and the receiving department permitted to use it. *Id.* at 2–3. Plaintiff testified he was never told of this policy and believed he was free to use this door like other working crews did, though he claimed this was the only time he ever used the door during the span of his employment. *Crump Dep. Tr.* at 62:7–8; 64:2–15; *Waldemar Dep. Tr.* at 10:6–14. While video surveillance confirmed Plaintiff used the side receiving door, his

hands were out of his pockets and no product was visible underneath his jacket. *Pl.'s Affirmation in Opp'n to Summ. J.*, *Ex. A.* When questioned in early January 2009 about using the door, Plaintiff stated initially he had only used the door once about a month prior, though subsequently acknowledged he may have been mistaken about how long ago it was. *Def.'s Decl. in Supp. of Summ. J.*, *Ex. H.*

Based on the eyewitness account of the alleged theft, the video surveillance, and what Defendant asserts was a lie about when Plaintiff used the door, Defendant decided to terminate Plaintiff. *Def.'s Supp. Mem.* at 5. During the termination meeting, Plaintiff alleges Mazzeo stated his "kind" was not allowed to use the side receiving door, which Plaintiff interpreted as a reference to him being African-American. *Pl.'s Opp'n Mem.* at 4–5. Mazzeo denies making the statement. *Def.'s Supp. Mem.* at 10. Plaintiff testified this alleged remark was the reason he feels he was discriminated against because of his race by Defendant. *Crump Dep. Tr.* at 82:11–14; 107:13–17.

## II. STANDARD OF LAW

### A. Summary Judgment

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The role of the court is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried. In determining whether summary judgment is appropriate, this Court will construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant." *Brod v. Omya, Inc.*, 653 F.3d 156, 164 (2d Cir. 2011) (internal quotations and citations omitted). No genuine issue of material fact exists "where the record taken as a whole could not lead a rational

3

trier of fact to find for the non-moving party." *Lovejoy-Wilson v. NOCO Motor Fuel, Inc.*, 263 F.3d 208, 212 (2d Cir. 2001) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

If the moving party satisfies this burden, the non-moving party must "make a showing sufficient to establish the existence of [each] element to that party's case . . . since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). Importantly, if the evidence produced by the non-moving party "is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986) (internal citations omitted).

The Second Circuit has "emphasized that trial courts must be especially chary in handing out summary judgment in discrimination cases, because in such cases the employer's intent is ordinarily at issue." *Chertkova v. Conn. Gen. Life Ins. Co.*, 92 F.3d 81, 87 (2d Cir. 1996); *see Whidbee v. Garzarelli Food Specialties, Inc.*, 223 F.3d 62, 71 (2d Cir. 2000). However, it is "beyond cavil that summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines*, 239 F.3d 456, 466 (2d Cir. 2001). Therefore, "even in the discrimination context, a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997).

**B. Title VII Race Discrimination Claim**

In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), the Supreme Court of the United States set forth a three-step burden shifting analysis for courts to apply when analyzing claims of discrimination under Title VII. First, a plaintiff must establish a *prima facie* case of

discrimination, *id.* at 802, by demonstrating: (1) "membership in a protected class;" (2) "qualification for the position;" (3) "adverse employment action;" and (4) "circumstances giving rise to an inference of discrimination." *Cruz v. Coach Stores, Inc.*, 202 F.3d 560, 567 (2d Cir. 2000). "Although the burden of establishing a *prima facie* case is not onerous, and has been frequently described as minimal, the Second Circuit has also noted that a jury cannot infer discrimination from thin air." *Stafford v. N.Y. Presbyterian Hosp.*, No. 06-cv-2150, 2011 WL 1131104, at *5 (E.D.N.Y. Mar. 28, 2011) (Vitaliano, J.) (internal citations omitted).

If a plaintiff establishes a *prima facie* case of discrimination, the burden "then must shift to the employer to articulate some legitimate, nondiscriminatory reason" for its actions. *McDonnell Douglas*, 411 U.S. at 802; *see Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981). "This burden is one of production, not persuasion." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). Once the employer satisfies this burden, "the presumption of discrimination drops out of the picture," and the plaintiff bears the burden of demonstrating "by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 143 (internal quotations and citations omitted).

### III. DISCUSSION

As the *McDonnell Douglas* framework requires, Plaintiff first must satisfy his burden of producing a *prima facie* case of discrimination. Plaintiff is within a protected class because he is African-American, so he has satisfied the first element of a Title VII claim. He is qualified for his former position as a stock associate, as various supervisors and human resource professionals of Defendant testified, and thus satisfies the second element. Plaintiff satisfies the third element of suffering an adverse employment action because he was fired from his position. In fact,

5

Defendant does not dispute that Plaintiff satisfies the first three elements of a *prima facie* case. However, Defendant contends that Plaintiff fails to establish the fourth element—that his discharge occurred under circumstances giving rise to an inference of discrimination. Defendant further asserts that, even if he can make a *prima facie* showing, Plaintiff cannot demonstrate as a matter of law the reason proffered by Defendant is a pretext for racial discrimination. The Court will address these arguments in turn.

## A. *Prima Facie* Case—Inference Of Discrimination

The Second Circuit has "characterized the evidence necessary to satisfy this initial burden [of a *prima facie* case] as 'minimal' and 'de minimis.'" *Zimmermann v. Assocs. First Capital Corp.*, 251 F.3d 376, 381 (2d Cir. 2001) (internal citations omitted). For example, "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the *prima facie* stage of the Title VII analysis." *Id.* Plaintiff argues he has met this minimal burden for two reasons: first, he was treated differently than two similarly situated workers, and second, the Vice President of Human Resources, Patrick Mazzeo, used a racist remark when he fired Plaintiff.

A plaintiff may demonstrate an inference of discrimination by showing that an employer treated him differently than other employees similarly situated in all material aspects. *Graham v. Long Island R.R.*, 230 F.3d 34, 39–40 (2d Cir. 2000). "What constitutes all material respects . . . varies somewhat from case to case . . . . Hence, the standard for comparing conduct requires a reasonably close resemblance of the facts and circumstances of plaintiff's and comparator's cases . . . ." *Id.* at 40 (internal citations omitted). Importantly, for other employees to be similarly situated, they "must have engaged in conduct similar to the plaintiff's . . . ." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 96 (2d Cir. 1999) (internal citations omitted).

6

Plaintiff claims he was treated differently than two other workers who also were accused of stealing in that he was the only one investigated and fired. He asserts "there is no explanation . . . as to why the same accusation would be considered credible as against Plaintiff, but not credible as against the other two individuals who were accused." *Pl.'s Opp'n Mem.* at 11. Plaintiff's argument is undermined because these two employees were fired at a later date for theft. But, even viewing the facts in a light most favorable to Plaintiff, his argument still fails for one crucial reason: he is not similarly situated in all material respects because he was the only one who was the subject of an eyewitness report at the time. Even assuming *arguendo* Defendant had general knowledge that these other two employees might be stealing, Defendant had both general and specific knowledge about Plaintiff. There is a significant difference between general allegations of theft and an eyewitness account of a fellow employee allegedly seeing Plaintiff steal product. Regardless of the veracity of the specific allegation, it nevertheless sets Plaintiff apart in a material respect from other employees. Therefore, Plaintiff has not demonstrated he was treated differently from employees similarly situated in all respects, and thus he has not met even the minimal *prima facie* burden under this rationale.

Next, Plaintiff asserts he was subject to a racial remark when he was fired. Specifically, he alleges Mazzeo told him his "kind" was not allowed to use the receiving department exit, which made him believe Mazzeo was "racist to the bones." *Pl.'s Opp'n Mem.* at 4–5. Though Defendant denies Mazzeo ever made this remark, at the summary judgment stage, the Court must view the facts in the light most favorable to the non-moving party. Keeping this and the *de minimis* standard for establishing a *prima facie* case in mind, the Court construes the alleged remark—though on its face not specifically referring to race—as a racially-based remark, and therefore Plaintiff has met his initial *McDonnell Douglas* burden.

7

## B. Burden Shifts To Defendant

Because Plaintiff established a *prima facie* case, *McDonnell Douglas* then requires Defendant to articulate a legitimate, nondiscriminatory reason for the adverse action. Again, the burden of Defendant "is one of production, not persuasion; it can involve no credibility assessment." *Reeves*, 530 U.S. at 142 (internal quotations and citations omitted). Defendant meets its burden by stating it fired Plaintiff based on eyewitness reports of alleged theft.

Plaintiff does not dispute that Defendant received such a report accusing Plaintiff of theft, but instead contends the report was inaccurate. However, the relevant inquiry is not whether Plaintiff actually stole product, but rather whether Defendant has proffered a nondiscriminatory reason for firing Plaintiff. In light of the low production threshold Defendant must meet under *McDonnell Douglas*, theft is a sufficiently legitimate nondiscriminatory reason for firing Plaintiff. *See Gorley v. Metro-North Commuter R.R.*, No. 99-cv-3240, 2000 WL 1876909, at *6 (S.D.N.Y. Dec. 22, 2000); *Sergilus v. Covenant House Under 21*, No. 96-cv-6210, 1999 WL 717274, at *1 (S.D.N.Y. Sept. 15, 1999). Therefore, the presumption of discrimination drops out, and the burden shifts back to Plaintiff to provide evidence sufficient for a reasonable jury to conclude Defendant's purported rationale was merely a pretext for racial discrimination.

## C. Plaintiff's Burden To Show Pretext

Courts must use a case-by-case approach to determine if judgment as a matter of law is appropriate in any given action. *Reeves*, 530 U.S. at 149. The Supreme Court articulated pertinent factors include: "the strength of the plaintiff's *prima facie* case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law." *Id* at 148–149. Although *Reeves* involved a post-trial motion for judgment as a matter of

8

law, "the standard for granting summary judgment 'mirrors' the standard for judgment as a matter of law, such that 'the inquiry under each is the same.'" *Id.* at 150 (internal citations omitted).

The Second Circuit has held post-*Reeves* that courts must "examin[e] the entire record to determine whether the plaintiff could satisfy his 'ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff.'" *Schnabel v. Abramson*, 232 F.3d 83, 90 (2d Cir. 2000) (citing *Reeves*, 530 U.S. at 143). As the Supreme Court noted in *Reeves*, "[c]ertainly there will be instances where, although the plaintiff has established a *prima facie* case and set forth sufficient evidence to reject the defendant's explanation, no rational fact-finder could conclude that the action was discriminatory. For instance, an employer would be entitled to judgment as a matter of law if the record conclusively revealed some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Id.* at 90 (quoting *Reeves*, 530 U.S. at 148).

This case presents a unique set of facts and allegations. In most cases where summary judgment is denied in a Title VII racial discrimination action, the plaintiff alleges numerous instances of purportedly racially-charged actions or remarks that tend to demonstrate the reason proffered by Defendant was pretextual. In most cases where summary judgment is granted, the plaintiff alleges only isolated, non-probative remarks or actions that are remote from the adverse employment action, which would not allow a rational jury to find discrimination. However, in this case, Plaintiff falls in between these usual circumstances: he alleges a single, arguably racially-based remark during his termination meeting, but he explicitly states that at no other

9

time during his entire tenure working for Defendant did he feel or encounter racial discrimination. Therefore, the dispositive issue is whether a rational fact finder could construe this one remark as proving intentional discrimination.

The Second Circuit has held "the more remote and oblique the [alleged discriminatory] remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." *Tomassi v. Insignia Fin. Grp., Inc.*, 478 F.3d 111, 115 (2d Cir. 2007). Conversely, "[t]he more a remark evinces a discriminatory state of mind, and the closer the remark's relation to the allegedly discriminatory behavior, the more probative that remark will be." *Id*; *see Stafford*, 2011 WL 1131104, at *8. The Second Circuit employs a four-factor test to evaluate the probative value of a remark made by an employer: "(1) who made the remark (i.e., a decision-maker, a supervisor, or a low-level co-worker); (2) when the remark was made in relation to the employment decision at issue; (3) the content of the remark (i.e., whether a reasonable juror could view the remark as discriminatory); and (4) the context in which the remark was made (i.e., whether it was related to the decision-making process)." *Henry v. Wyeth Pharm., Inc.*, 616 F.3d 134, 149 (2d Cir. 2010).

Although Defendant denies Mazzeo made the alleged remark at issue—something with which a jury may one day agree—the Court must assume he did for the purposes of a motion for summary judgment. Mazzeo was the Vice President of Human Resources for Defendant, and he testified he was the ultimate authority within his department involved in making the decision to fire Plaintiff. Plaintiff alleges Mazzeo made the remark during his termination meeting, so the remark, if made, was made contemporaneously with the adverse employment action. Again, though the remark is race-neutral on its face, the Court must assume "your kind" is a racially-charged remark for the purposes of this motion. Finally, as for context, the remark was made

10

following an investigation, during the actual termination meeting, and allegedly as part of the reason Plaintiff was given for his termination. Defendant argues a single, race-neutral remark is insufficient to raise an inference of discrimination. This argument ignores the fact that disallowing Plaintiff's "kind" from using a specific door reasonably could be interpreted by a jury as discriminatory, and the Court must draw this inference in favor of the non-moving party. Further, while Defendant is correct that even a decision-maker uttering stray discriminatory remarks may be insufficient to raise an inference of discrimination, a racially-based remark made during a termination meeting by a decision-maker cannot be construed as stray under *Henry*. Because the remark is probative of discrimination, it is sufficient to defeat a motion for summary judgment.

After a careful analysis using the standards set forth by the Supreme Court and the Second Circuit, this Court finds that a rational fact finder could conclude that the termination of Plaintiff by Defendant arose from intentional discrimination. Drawing all inferences in favor of the non-moving party, Plaintiff both has met the minimal burden of establishing a *prima facie* case and has produced evidence sufficient for a rational finder of fact to conclude that he was fired because of racial discrimination. Therefore, summary judgment for Defendant is denied.

**SO ORDERED**

Dated: Brooklyn, New York
          March 1, 2012

                                              s/WFK

                                              _____
                                              HON. WILLIAM F. KUNTZ, II
                                              United States District Judge

11